UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CZESLAW ZALEWSKI,                                                    13-CV-7015 (ARR)(JMA)

                    Plaintiff,                                     **Amended Complaint**

     -against-

THE CITY OF NEW YORK, POLICE OFFICER                 **Demand for Jury Trial**
PETER JOHN SANTIAGO, 94th Precinct,
POLICE OFFICER VIODELYS BRATHWAITE,
94th Precinct, SERGEANT BRIAN BARRA, 94th
Precinct, SERGEANT TERENCE O'DONOHOE,
94th Precinct, SERGEANT THERESE GARAFALO,
94th Precinct, SERGEANT BRIAN BARRA, 94th
Precinct, CAPTAIN KOMAR, 94th Precinct, and
POLICE OFFICER "JOHN AND JANE DOES 1-15",

                    Defendants.
------------------------------------------------------------x

     CZESLAW ZALEWSKI, through his attorney Kathy A. Polias, Attorney-at-Law, complaining of the Defendants POLICE OFFICER PETER JOHN SANTIAG0, 94th Precinct, POLICE OFFICER VIODELYS BRATHWAITE, 94th Precinct, SERGEANT TERENCE O'DONOHOE, 94th Precinct, SERGEANT THERESE GARAFALO, 94th Precinct, SERGEANT BRIAN BARRA, 94th Precinct, CAPTAIN KOMAR, 94th Precinct, and POLICE OFFICER "JOHN AND JANE DOES 1-15", respectfully alleges as follows:

## NATURE OF ACTION

1.     This action is brought to remedy:

(a)     Defendants' arrest and imprisonment of Plaintiff without probable or reasonable cause, while acting under color of state law, in violation of 42 U.S.C. Sec. 1983 and the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, and Defendants' conspiracy to commit same;

(b) Defendants' false arrest and imprisonment of Plaintiff, in violation of common law, and Defendants' conspiracy to commit same;

(c) Defendants' excessive use of force against Plaintiff, while acting under color of state law, in violation of 42 U.S.C. Sec. 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution, and Defendants' conspiracy to commit same;

(d) Defendants' assault and battery of Plaintiff, in violation of common law, and Defendants' conspiracy to commit same; and

(e) Defendants' retaliation against Plaintiff, while acting under color of state law, for exercising his right to freedom of speech, in violation of 42 U.S.C. Sec. 1983 and the First and Fourteenth Amendments to the U.S. Constitution, and Defendants' conspiracy to commit same.

## JURISDICTION AND VENUE

2. Jurisdiction is specifically conferred upon this Court by 42 U.S.C. Sec. 1983. This Court has pendent and supplemental jurisdiction over Plaintiff's common law claims, as the facts that form the basis of the common laws are substantially similar to the facts that form the basis of the federal law claims.

3. Venue is proper because the incidents complained of in this lawsuit occurred in Brooklyn, New York, which is within the Eastern District of New York.

## PARTIES

4. During all times relevant and material to this Complaint, Plaintiff Czeslaw Zalewski was a resident of the State of New York within the jurisdiction of this Court.

5. During all times relevant and material to this Complaint, Defendant City of New York was a municipal corporation organized under the laws of the State of New York.

6. During all times relevant and material to this Complaint, Defendants Police Officer Peter John Santiago, Police Officer Viodelys Brathwaite, Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Sergeant Brian Barra, Captain Komar, and Police Officer "John and Jane Does 1-15" were employed by Defendant City of New York in the 94th Precinct of the New York City Police Department.

7. During all times relevant and material to this Complaint, the individual Defendants were acting as agents of Defendant City of New York under the principal-agent/*respondeat superior* common law theory.

## FULFILLMENT OF ADMINISTRATIVE PREREQUISITES

8. Plaintiff filed a Notice of Claim against the City of New York within 90 days of the events giving rise to the common law claims and it was assigned Claim Number 2012P1030370.

## STATEMENT OF FACTS

9. On September 10, 2012 at around 9:45 p.m., Plaintiff was walking in Williamsburg, Brooklyn, NY on North 7th Street between Kent Avenue and White Avenue when he heard yelling. He turned around and saw Defendant Police Officer Peter John Santiago running in his direction. Plaintiff stepped aside to get out of Defendant Police Officer Santiago's way, thinking that Santiago was in the process of chasing someone else. When Defendant Police Officer Santiago reached Plaintiff, he jumped on Plaintiff, pushed him hard against the wall face first, and handcuffed him behind his back.

10. Plaintiff was dumbfounded. He repeatedly asked Defendant Police Officer Santiago why he was being arrested and was not given any response. Less than a minute after

Defendant Police Officer Santiago handcuffed Plaintiff, a Police car being driven by Defendant Police Officer Viodelys Brathwaite, who was Defendant Police Officer Santiago's partner, pulled up. Defendant Police Officer Santiago threw Plaintiff into the car and then got in the car himself.

11. The two Police Officers took Plaintiff to the 94th Precinct. During the car ride, Plaintiff repeatedly asked them why he had been arrested and was not given any response. Plaintiff's shoulder, neck, and lower back were in pain, as Defendant Police Officer Santiago, who was around 250-300 pounds and between 6' and 6'5, had jumped on him and pushed him hard against the wall. Defendant Sergeant Brian Barra approved the arrest.

12. At the 94th Precinct, Plaintiff was put in a holding cell. During the first two hours at the Precinct, Plaintiff repeatedly asked Defendant Police Officer Santiago and other officers with whom he came in contact why he had been arrested and was not given any response. He also complained about pain in his shoulder, neck, and lower back and was not offered any medical treatment.

13. After these first two hours, Defendant Captain Komar approached Plaintiff and asked if he was a lawyer. Plaintiff did not confirm whether he was a lawyer. Defendant Captain Komar walked away from Plaintiff, but then returned after a few minutes and told Plaintiff that he had been arrested because he was allegedly urinating in public, which Plaintiff had not done. At that point, Plaintiff told Defendant Captain Komar that he was not going to talk to him any further and that he wanted to make a phone call and speak to his lawyer. Defendant Captain Komar responded that they couldn't let Plaintiff make a phone call until they took his fingerprints. Plaintiff asked why they needed to take his fingerprints if they were only charging him with a violation, for which he should only get a summons. Plaintiff said that he wanted to

speak to his lawyer before he did anything else, including letting them take his fingerprints.  He said that it was his right to make a phone call and the Precinct's duty to let him make a phone call.  Different officers came over to him asking to take his fingerprints and he gave them the same response.

        14.      At around 3:30 a.m., about five Police Officers, including upon information and belief, Defendant Sergeant Terence O'Donohoe, came into Plaintiff's cell.  They woke him up and told him to stand up.  Four of the officers held Plaintiff and Defendant Sergeant O'Donohoe stood in front of him and pointed a taser gun first at his heart and then between his eyes.  Defendant Sergeant O'Donohoe threatened that if Plaintiff did not give him his information, he was going to taser Plaintiff.  Plaintiff responded that there had been a lot of cases in the past few years when people whom the Police had tasered had died from being tasered.  Plaintiff told Defendant Sergeant O'Donohoe that this was police brutality and excessive force.  Plaintiff further told him to do whatever he needed to do but that he (Defendant Sergeant O'Donohoe) was going to be responsible for whatever he did.  Plaintiff also said that he was going to sue Defendant Sergeant O'Donohoe.  Defendant Sergeant O'Donohoe did not end up tasering Plaintiff but punched him in the face several times, while Plaintiff was being held by the other officers.  Plaintiff fell down to the floor and began bleeding from his nose.  While Plaintiff was down on the floor, some or all of the Police Officers kicked Plaintiff several times and then left the cell.

        15.      At around 6:00 a.m., Plaintiff was transported from the Precinct to Central Booking. He was not only handcuffed, but shackles were placed on his legs.  When Plaintiff reached Central Booking with the officers who had brought him, he heard one of the officers tell an officer in Central Booking not to allow Plaintiff to make a phone call.  An officer in Central

Booking asked Plaintiff for his fingerprints and Plaintiff told him the same thing that he had said to the officers at the 94th Precinct -- that he was not going to give his fingerprints before he was allowed to make a phone call and speak to his lawyer.  Plaintiff told the officer within the earshot of many other people that he had been arrested for no reason, that the Precinct had not allowed him to make a phone call, and that the officers in the Precinct had beaten him up.

16.     Another officer at Central Booking (a Black male) approached Plaintiff and asked Plaintiff what had happened to him, as Plaintiff was bleeding.  He told Plaintiff he was a supervisor there.  Plaintiff related the series of events to him.  The officer arranged for Plaintiff to be taken to the hospital.  Plaintiff was taken to Woodhull Hospital in Brooklyn by the two Police Officers from the 94th Precinct who had brought him to Central Booking.  Plaintiff was in the hospital for about 12 hours.  He was shackled to a bed and watched first by the two Police Officers who had brought him and then by one Police Officer Rivera, also from the 94th Precinct.  Plaintiff was X-rayed and prescribed some medications.  Plaintiff asked hospital staff for the medical records, but Police Officer Rivera took the records and told Plaintiff that Plaintiff would receive them when they got back to the Precinct.  Plaintiff never received them.

17.     It was around the evening of September 11, 2012 when Plaintiff was taken back to the 94th Precinct from the hospital.  At the Precinct, Defendant Sergeant Therese Garafalo approached Plaintiff very abrasively and told him that if he didn't give them his information, they were going to make sure that he was carried out in a black body bag.  Plaintiff asked Defendant Sergeant Garafalo if she knew what she was saying, asked if something was wrong with her or her head, and said that if he said the same thing to her, he would be arrested for harassment.  Defendant Sergeant Garafolo said she knew what she was saying.

18.     After about 2 or 3 hours at the Precinct, Plaintiff was again transported to Central Booking in handcuffs and shackles.  Plaintiff was not feeling well from the beatings.  He had a headache, lower back pain, and neck and shoulder pain.  Plaintiff asked again for medical treatment at Central Booking.  He was taken back to Woodhull Hospital, where he stayed for 8-10 hours.  He was again shackled to a bed and watched by Police Officers.  While at the hospital, Plaintiff told a nurse that he was afraid for his life and explained to her what the Defendants had done to him.  He mentioned the cases of Amadou Diallo, Abner Louima, and Rodney King.  He told the nurse that his family did not even know where he was or what had happened to him and asked the nurse to contact his family.  He told the nurse that he felt like he had been kidnapped by the Police from the street.  Upon information and belief, the nurse contacted Plaintiff's family, and after Plaintiff had already been imprisoned for about 48 hours, his family finally knew where he was.

19.     From the hospital, Plaintiff was again transported back to the 94th Precinct on September 12, 2012, where he spent around 3-4 hours.  He was told by several officers at the Precinct that they had never had a case like his.  After around 3-4 hours at the Precinct, several officers, including one with the last initial "M", took Plaintiff out of the cell to take him to Central Booking, again in handcuffs and shackles.  As they walked Plaintiff past the desk, Defendant Captain Komar said that if Plaintiff was complaining about their treatment of him, he should imagine how it would be if he was in the FBI's custody.  Plaintiff responded that he did not deserve this treatment, that no one deserved this treatment, and that he was going to sue them for this.  The officers who were holding him then began punching and kicking him in front of the desk and in front of Captain Komar.  Captain Komar did not tell them to stop.

20. When Plaintiff reached Central Booking, he told the officers there that he needed to go to the hospital again because he had been beaten up in the Precinct again. Plaintiff was again taken to Woodhull Hospital. He had an MRI there. One of the staff members yelled at the Police Officers who were there with Plaintiff about what they were doing to Plaintiff. Plaintiff was at the hospital for about 8 hours.

21. From the hospital, Plaintiff was taken back to the 94th Precinct again. Plaintiff was kept in the Precinct for a few hours and was then transported again to Central Booking. He was asked at Central Booking when he was going to have his fingerprints taken. In response, Plaintiff said that he wanted to talk to his lawyer and see what his lawyer said and he would let them know. On September 13, 2012, Plaintiff was allowed for the first time at Central Booking to call his lawyer. After Plaintiff was allowed to make the phone call, he told the officers at Central Booking that he was ready and willing to have his fingerprints taken.

22. The officers at Central Booking told Plaintiff that he was going to be put on the docket and that he was going to see a judge that night. Plaintiff waited. Shortly after midnight, two Police Officers from the 94th Precinct whom he knew from the previous night appeared and told Plaintiff that he had to go with them. Plaintiff told them that he did not want to go with them, that he was afraid for his life, that they were going to kill him at the Precinct, and that he felt safer at Central Booking than in the Precinct. He asked why he had to go with them and one of the officers told him that it was procedure because he had been to the hospital. However, Plaintiff had already been to the Precinct again between his release from the hospital and his return to Central Booking. Nevertheless, Plaintiff had no choice but to go with them back to the Precinct again.

23. On the morning of September-14, 2012, Plaintiff was returned to Central Booking and was told again at Central Booking that he was most likely going to see a judge that day. Plaintiff was finally taken before a judge in Kings County Criminal Court after the lunch break. The judge and Plaintiff's legal aid attorney both said that the case was dismissed and Plaintiff was free to go. Plaintiff was not aware that the criminal case was adjourned contemplating dismissal until later.

24. During the time that Plaintiff was in custody, he asked several officers if he could speak to the Police Department's Internal Affairs Bureau. Some of the officers told him that he was not allowed to do so and others told him that he would be able to speak to the Internal Affairs Bureau but he was not given the opportunity to do so.

25. Plaintiff was falsely arrested and imprisoned without probable cause for almost four days. He lost his freedom and liberty for almost four days as a result of Defendants' actions as well as suffered severe physical, emotional, and mental pain and distress from the arrest and imprisonment. Defendants also used excessive force against him and assaulted and battered Plaintiff, causing Plaintiff severe physical, emotional, and mental pain and distress. His physical injuries included pain and bruising on various parts of his body and a cut lip.

26. The amount of time that Plaintiff was imprisoned was unreasonably extended by the City of New York's policy, practice, and procedure of returning arrestees to the Precinct after they receive medical treatment in a hospital, even if they were taken to the hospital from Central Booking. This policy is unnecessary and only serves to extend the time before an arrestee appears before a judge.

**AS FOR A FIRST CAUSE OF ACTION**

27. Plaintiff incorporates by reference paragraphs 1 through 26 herein.

28.     In violation of 42 U.S.C. Sec. 1983, Defendants Police Officer Peter John Santiago and Police Officer Viodelys Brathwaite, while acting under color of State Law, violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution by arresting Plaintiff without probable cause to believe that he had committed any crime.  They did so with the approval/consent of Defendant Sergeant Brian Barra.  Also, in violation of 42 U.S.C. Sec. 1983, these individual Defendants, with the collaboration, assistance, consent, knowledge, and/or authorization of Defendants Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and Police Officer "John and Jane Does 1-15" violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, by imprisoning him for almost four days without probable cause to believe that he had committed any crime.  Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

### AND AS FOR A SECOND CAUSE OF ACTION

29.     Plaintiff incorporates by reference paragraphs 1 through 28 herein.

30.     In violation of 42 U.S.C. Sec. 1983, Defendants Police Officer Peter John Santiago, Defendant Police Officer Viodelys Brathwaite, and Defendant Sergeant Brian Barra, while acting under color of State Law, conspired to violate Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution by conspiring to arrest Plaintiff without probable cause to believe that he had committed any crime.  Also, in violation of 42 U.S.C. Sec. 1983, these individual Defendants conspired with Defendants Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and Police Officer "John and Jane Does 1-15" to violate Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, by conspiring to imprison him for almost four days without probable cause to

believe that he had committed any crime. Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

### AND AS FOR A THIRD CAUSE OF ACTION

31. Plaintiff incorporates by reference paragraphs 1 through 30 herein.

32. In violation of common law, Defendant Police Officer Peter John Santiago and Defendant Police Officer Viodelys Brathwaite falsely arrested Plaintiff without reasonable cause to believe that he had committed any crime. They did so with the approval/consent of Defendant Sergeant Brian Barra. Also, in violation of common law, these individual Defendants, with the collaboration, assistance, consent, knowledge, and/or authorization of Defendants Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and Police Officer "John and Jane Does 1-15" imprisoned Plaintiff for almost four days without reasonable cause to believe that he had committed any crime. Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

### AND AS FOR A FOURTH CAUSE OF ACTION

33. Plaintiff incorporates by reference paragraphs 1 through 32 herein.

34. In violation of common law, Defendants Police Officer Peter John Santiago, Police Officer Viodelys Brathwaite, and Sergeant Brian Barra conspired to falsely arrest Plaintiff without reasonable cause to believe that he had committed any crime. Also, in violation of common law, these individual Defendants conspired with Defendants Sergeant Terence O'Donohoe, Sergeant Garafolo, Captain Komar, and Police Officer "John and Jane Does 1-15" to falsely imprison Plaintiff for almost four days without reasonable cause to believe that he had committed any crime. Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

## AND AS FOR A FIFTH CAUSE OF ACTION

35. Plaintiff incorporates by reference paragraphs 1 through 34 herein.

36. In violation of 42 U.S.C. Sec. 1983, Defendants Police Officer Peter John Santiago, Police Officer Viodelys Brathwaite, Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and some of Police Officer "John and Jane Does 1-15" used, authorized the use of, directed the use of, and/or failed to intervene in or stop the use of, excessive and objectively unreasonable force against Plaintiff.  Defendants thereby violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, while acting under color of State Law.  Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

## AND AS FOR A SIXTH CAUSE OF ACTION

37. Plaintiff incorporates by reference paragraphs 1 through 36 herein.

38. In violation of 42 U.S.C. Sec. 1983, Defendants Police Officer Peter John Santiago, Police Officer Violdelys Brathwaite, Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and some of Police Officer "John and Jane Does 1-15" conspired with one another to use, authorize the use of, direct the use of, and/or fail to stop or intervene in the use of, excessive and objectively unreasonable force against Plaintiff.  Defendants thereby conspired to violate Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, while acting under color of State Law.  Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

## AND AS FOR A SEVENTH CAUSE OF ACTION

39. Plaintiff incorporates by reference paragraphs 1 through 38 herein.

40. In violation of common law, Defendants Police Officer Peter John Santiago, Police Officer Viodelys Brathwaite, Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and some of Police Officer "John and Jane Does 1-15", without justification, assaulted and battered Plaintiff, authorized the assault and battery of Plaintiff, directed the assault and battery of Plaintiff, and/or failed to intervene in or stop the assault and battery of Plaintiff. Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

41. Plaintiff incorporates by reference paragraphs 1 through 40 herein.

42. In violation of common law, Defendants Police Officer Peter John Santiago, Police Officer Viodelys Brathwaite, Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and some of Police Officer "John and Jane Does 1-15", without justification, conspired with one another to assault and batter Plaintiff, authorize the assault and battery of Plaintiff, direct the assault and battery of Plaintiff, and/or fail to intervene in or stop the assault and battery of Plaintiff. Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

## AND AS FOR A NINTH CAUSE OF ACTION

43. Plaintiff incorporates by reference paragraphs 1 through 42 herein.

44. In violation of 42 U.S.C. Sec. 1983, Defendants Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and some of Police Officer "John and Jane Does 1-15" violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution by keeping him imprisoned for almost four days in retaliation for Plaintiff's exercise

of his right to freedom of speech.  Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

### AND AS FOR A TENTH CAUSE OF ACTION

45. Plaintiff incorporates by reference paragraphs 1 through 44 herein.

46. In violation of 42 U.S.C. Sec. 1983, Defendants Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and Police Officer "John and Jane Does 1-15" conspired with one another to violate Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution by conspiring to keep Plaintiff imprisoned for almost four days in retaliation for Plaintiff's exercise of his right to freedom of speech.  Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

### AND AS FOR AN ELEVENTH CAUSE OF ACTION

47. Plaintiff incorporates by reference paragraphs 1 through 46 herein.

48. In violation of 42 U.S.C. Sec. 1983, Defendants Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and some of Police Officer "John and Jane Does 1-15" violated Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution by using, authorizing the use of, directing the use of, and/or failing to intervene in or stop, excessive and objectively unreasonable force in retaliation for Plaintiff's exercise of his right to freedom of speech.  Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

### AND AS FOR A TWELFTH CAUSE OF ACTION

49. Plaintiff incorporates by reference paragraphs 1 through 48 herein.

50. In violation of 42 U.S.C. Sec. 1983, Defendants Sergeant Terence O'Donohoe, Sergeant Therese Garafalo, Captain Komar, and some of Police Officer "John and Jane Does 1-

15" conspired to violate Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution by conspiring to use, authorize the use of, direct the use of, and/or fail to intervene in or stop, excessive and objectively unreasonable force in retaliation for Plaintiff's exercise of his right to freedom of speech.  Defendants' actions were malicious, wanton, gross, and with reckless disregard of Plaintiff's rights.

### AND AS FOR A THIRTEENTH CAUSE OF ACTION

51.     Plaintiff repeats and re-alleges paragraphs 1 through 50 as if each is set forth herein.

52.     Defendants' imprisonment of Plaintiff was unreasonably extended lengthened by the City of New York's policy, practice, and procedure of returning arrestees to the Precinct after they receive medical treatment in a hospital, even if they were taken to the hospital from Central Booking.  This policy is unnecessary and only serves to extend the time before an arrestee appears before a judge.  Therefore, Defendant City of New York is jointly and severally liable with the individual Defendants for each of the First and Second Causes of Action.

### AND AS FOR A FOURTEENTH CAUSE OF ACTION

53.     Plaintiff repeats and re-alleges paragraphs 1 through 52 as if each is set forth herein.

54.     The individual Defendants complained of in the Third, Fourth, Seventh, and Eighth Causes of Action were acting as agents of Defendant City of New York.  Under the common law principal-agent/*respondent superior* theory, Defendant City of New York is therefore jointly and severally liable with the individual Defendants for those causes of action.

WHEREFORE, Plaintiff requests judgment as follows:

**For each of the First, Second, and Thirteenth Causes of Action, against Defendant City of New York and the individual Defendants named therein, jointly and severally:**

  i. General and compensatory damages for Plaintiff's loss of freedom and liberty for almost four days and the emotional, mental, and physical distress that Plaintiff sustained and has suffered as a result of Defendants' actions, in an amount to be determined at trial and in accordance with evidence;

  ii. Specific damages for any amounts for which Woodhull Hospital will bill Plaintiff for the treatment that he received there while in Defendants' custody;

  iii. Punitive damages, in an amount to be determined at trial and in accordance with evidence;

  iv. Reasonable attorneys' fees and the costs and disbursements of this action; and

  v. Such other relief as Plaintiff may be shown entitled to.

**For each of the Ninth and Tenth Causes of Action, against the individual Defendants named therein, jointly and severally:**

  i. General and compensatory damages for Plaintiff's loss of freedom and liberty for almost four days and the emotional, mental, and physical distress that Plaintiff sustained and has suffered as a result of Defendants' actions, in an amount to be determined at trial and in accordance with evidence;

  ii. Specific damages for any amounts for which Woodhull Hospital will bill Plaintiff for the treatment that he received there while in Defendants' custody;

  iii. Punitive damages, in an amount to be determined at trial and in accordance with evidence;

  iv. Reasonable attorneys' fees and the costs and disbursements of this action; and

v.      Such other relief as Plaintiff may be shown entitled to.

**For each of the Fifth, Sixth, Eleventh, and Twelfth Causes of Action against the individual Defendants named therein, jointly and severally:**

i.      General and compensatory damages for the emotional, mental, and physical distress that Plaintiff sustained and has suffered as a result of Defendants' actions, in an amount to be determined at trial and in accordance with evidence;

ii.     Specific damages for any amounts for which Woodhull Hospital will bill Plaintiff for the treatment that he received there while in Defendants' custody;

iii.    Punitive damages, in an amount to be determined at trial and in accordance with evidence;

iv.     Reasonable attorneys' fees and the costs and disbursements of this action; and

v.      Such other relief as Plaintiff may be shown entitled to.

**For each of the Third, Fourth, and Fourteenth Causes of Action against Defendant City of New York and the individual Defendants named therein, jointly and severally:**

i.      General and compensatory damages for Plaintiff's loss of freedom and liberty for almost four days and the emotional, mental, and physical distress that Plaintiff sustained and has suffered as a result of Defendants' actions, in an amount to be determined at trial and in accordance with evidence;

ii.     Punitive damages, in an amount to be determined at trial and in accordance with evidence;

iii.    The costs and disbursements of this action; and

iv.     Such other relief as Plaintiff may be shown entitled to.

**For each of the Seventh, Eighth, and Fourteenth Causes of Action against Defendant City of New York and the individual Defendants named therein, jointly and severally:**

i. General and compensatory damages for the emotional, mental, and physical distress that Plaintiff sustained and has suffered as a result of Defendants' actions, in an amount to be determined at trial and in accordance with evidence;

ii. Punitive damages, in an amount to be determined at trial and in accordance with evidence;

iii. The costs and disbursements of this action; and

iv. Such other relief as Plaintiff may be shown entitled to.

Dated:  Brooklyn, New York
        September 1, 2014

By:___/s/_____
Kathy A. Polias
Attorney-at-Law
*Attorney for Plaintiff Czeslaw Zalewski*
68 Jay Street, Suite 201
Brooklyn, NY 11201
Tel. No. (718) 514-2062