UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Czeslaw Zalewski, | 1:13-CV-7015 (ARR) (PK) |
| *Plaintiff*, | |
| – against – | **Not for Publication** |
| The City of New York, *et al.*, | |
| *Defendants*. | **Opinion & Order** |

ROSS, United States District Judge:

After being arrested, the plaintiff in this case claims that he was brutalized by multiple officers of the New York City Police Department because he refused to identify himself or allow himself to be fingerprinted. After charges were dropped against him, the plaintiff brought a host of claims against the City of New York and several NYPD officers. The defendants have now moved for partial summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

*Factual Background*

On September 10, 2012, the plaintiff was observed on a Brooklyn sidewalk by defendant Officer Peter John Santiago. Defs.' 56.1 Statement ¶¶ 1–2, ECF No. 64. What the plaintiff was doing there is disputed: Santiago has testified that the plaintiff was urinating (Santiago Dep. 25:10–23, 28:7–12, 28:22–29:2, ECF No. 67-3), whereas the plaintiff's testimony is that he was not (Zalewski Dep. Pt. 1, at 124:6–9, ECF No. 67-1). Further, Santiago testified that the plaintiff ran from him (Santiago Dep. 27:12–28:12, 29:20–30:23), but the plaintiff has flatly denied that (*see* Zalewski Dep. Pt. 1, at 100:19–22). In any event, the parties

1

do not dispute that Santiago ultimately reached the plaintiff, jumped on him, pushed him hard against a wall, and handcuffed him behind his back. Defs.' 56.1 Statement ¶¶ 5, 7. The arrest occurred at about 9:46 PM. *Id.* ¶ 19.

Around this time, defendant Officer Viodelys Brathwaite pulled up in a police car. *Id.* ¶ 9. Brathwaite has testified that when she caught sight of the two men, Santiago was "having difficulty placing the [plaintiff] in cuffs" due to the plaintiff "flailing his arms, trying not to give his arms to the officer." Brathwaite Dep. 29:17–25, ECF No. 67-5. Brathwaite also testified that she approached the two, but by the time she had reached them, Santiago had handcuffed the plaintiff. *Id.* at 31:4–17. Santiago then put him in the back of the car. Defs.' 56.1 Statement ¶ 10. The plaintiff has testified that Santiago "threw" him inside the car, causing him to hit his forehead and suffer a headache. Zalewski Dep. Pt. 1, at 108:17–24, 110:1–4, 14–24. Brathwaite then drove the plaintiff to the precinct. Defs.' 56.1 Statement ¶ 20. Defendant Sergeant Brian Barra approved the plaintiff's arrest. *Id.* ¶ 17.

Upon arriving at the precinct, the plaintiff refused to provide the officers with identifying pedigree information and refused to be fingerprinted. *See* Zalewski Dep. Pt. 1, at 124:17–18, 126:1–14, 133:2–9. The plaintiff has testified that his resistance to these demands stemmed from the officers' refusal to allow him to make a telephone call; he would not comply with their requests, he explained, until he was allowed to place a call. *Id.* at 124:19–125:6, 125:14–126:14, 127:6–128:22, 133:2–13; Zalewski Dep. Pt. 2, at 252:11–253:1, ECF No. 67-2.

What transpired over the next few days remains a matter of some uncertainty. It is undisputed, however, that the plaintiff remained in the custody of police officers until September 14, 2012 (Defs.' 56.1 Statement ¶¶ 65–66), when it appears that he was finally arraigned, at 2:32 PM, and his criminal case was adjourned in contemplation of dismissal (*see* Arraignment Form 1, ECF No. 63-6; Cert. of Disposition, ECF No. 67-12). In the interim,

the plaintiff received medical attention at least three times and was sent to the hospital at least twice. *See* Defs.' 56.1 Statement ¶¶ 58, 62, 64, 67.[1]

At least one of those hospital visits occurred early in the morning following his arrest, on September 11, 2012, at 3:22 AM. *See id.* ¶ 58. Hospital records from that date state that the plaintiff had "no visible or obvious sign of skin injury," "no visible injuries noted at [his] forehead," and "no sign of trauma." *Id.* ¶ 69.

Nevertheless, the plaintiff's hospital visits were apparently occasioned by assaults that the plaintiff experienced while in police custody. One night, for instance, in the middle of the night, defendant Sergeant Terence O'Donohoe and approximately three or four other officers entered the plaintiff's holding cell. *Id.* ¶¶ 37–38. Although the record on the point is not entirely clear, the parties appear to agree that this incident occurred during the first night that the plaintiff was in custody—that is, either late on September 10 or early in the morning of September 11. *See* Defs.' Br. 4, ECF No. 62; Pl.'s Br. 6, ECF No. 65. The plaintiff testified that on this occasion O'Donohoe demanded that the plaintiff provide pedigree information, pointed his Taser gun at the plaintiff, and threatened to use it on him if he did not comply. Zalewski Dep. Pt. 1, at 142:20–144:2, 16–19. And the plaintiff testified that he responded to O'Donohoe's threat by warning that if anything happened to him, his family would sue O'Donohoe and the city. *Id.* at 144:2–7. The defendants admit that thereafter, while the other officers held the plaintiff, O'Donohoe punched him. *See* Defs.' 56.1 Statement ¶ 38; *see also* Zalewski Dep. Pt. 1, at 144:7–12. The defendants also acknowledge that after the plaintiff fell to the ground, O'Donohoe and the other officers proceeded to kick him, kicking his head, his

---

[1] The plaintiff testified that he was sent to the hospital three times. Zalewski Dep. Pt. 2, at 193:12–13. Defendants, by contrast, have submitted documentary evidence suggesting that the plaintiff was sent to the hospital twice and received medical treatment elsewhere two other times. *See* Arraignment Form 1.

3

torso, his arms, and his legs, leaving the plaintiff with a bleeding forehead and a bruised stomach. Defs.' 56.1 Statement ¶¶ 39–40, 42, 44.

After visiting the hospital, the plaintiff was returned to the precinct during the evening of September 11, 2012. *Id.* ¶ 60. The plaintiff has testified that, once back at the precinct, defendant Sergeant Therese Garafalo told him that he would be carried out the next day in a "body bag." Zalewski Dep. Pt. 2, at 207:17–22, 218:18–21, 219:8–20.

Another attack on the plaintiff apparently prompted a second hospital visit. The plaintiff testified that, at some point after his first hospital visit,[2] when he was about to be transported from the precinct to central booking, defendant Captain Stefan Komar made fun of him, laughing that if he were in FBI custody, the plaintiff would be treated much worse than he had been treated at the precinct, and would even be waterboarded. *Id.* at 221:17–222:8, 238:5–13. Plaintiff has testified that he responded to Komar that "nobody deserves this treatment." *Id.* at 238:15–19; *see also id.* at 222:9–11. Again, the defendants acknowledge that thereafter a number of unidentified officers punched and kicked the plaintiff in front of Komar. Defs.' 56.1 Statement ¶ 49; *see also* Zalewski Dep. Pt. 2, at 222:11–15, 238:20–22. The officers punched the plaintiff in the face, chest, stomach, kidneys, legs, and back, for a number of minutes. Defs.' 56.1 Statement ¶¶ 50–51. As a result of the beating, the plaintiff was bleeding from his forehead, cheeks, nose, and lips, had bruises to his chest, stomach, arms, and legs, and had scratches on his face. *Id.* ¶ 52. The plaintiff was then unable to walk, so unidentified officers dragged him away. *Id.* ¶ 53. The plaintiff was subsequently taken back to the hospital. *Id.* ¶ 54. Eventually, as noted above, he was arraigned and released.

---

[2] The record is unclear as to the time or date.

*Procedural History*

The plaintiff filed suit on December 9, 2013. Compl., ECF No. 1. His amended complaint, filed September 16, 2014, names the city, Santiago, Brathwaite, Barra, O'Donohoe, Garafalo, Komar, and several John Doe officers as defendants and states fourteen causes of action. Am. Compl., ECF No. 11. As relevant here, the amended complaint alleges (1) that Santiago, Brathwaite, O'Donohoe, Garafalo, and Komar used, directed, or failed to intervene to stop the use of excessive force against the plaintiff, in violation of federal and state law (*see id.* ¶¶ 36, 40);[3] (2) that Santiago, Brathwaite, Barra, O'Donohoe, Garafalo, and Komar arrested the plaintiff without probable cause and held him for almost four days before arraignment, in violation of federal and state law (*see id.* ¶¶ 28, 32);[4] and (3) that O'Donohoe, Garafalo, and Komar violated 42 U.S.C. § 1983 by retaliating against the plaintiff for protected First Amendment activity both by using, directing, or failing to stop the use of excessive force against him and by holding him for almost four days before arraignment (*see id.* ¶¶ 44, 48).[5]

After the close of discovery, the defendants filed this motion, seeking summary judgment (1) for all defendants on the excessive-force claims, (2) for Brathwaite and Barra on the false-arrest and false-imprisonment claims, and (3) for all relevant defendants on the retaliation claims. *See* Defs.' Br. 7, 12, 14.

## DISCUSSION

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is

---

[3] The federal claims are brought under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments, and the state claims are for assault and battery.
[4] The federal claims are brought under § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments, and the state claims are for false arrest and false imprisonment.
[5] The complaint also seeks to hold the city liable for the alleged state-law violations by the individual defendants. *See* Am. Compl. ¶ 54.

5

'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The burden of demonstrating that no material fact exists lies with the party seeking summary judgment." *Id.*

"When considering a motion for summary judgment," then, I "must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Id.* "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

As for the substantive law, "except for § 1983's requirement that the tort be committed under color of state law," which is not disputed here, "§ 1983 use of excessive force and state law assault and battery" are "substantially identical" claims. *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991). The same is true of "§ 1983 unlawful arrest and detention and state law false arrest [and imprisonment]." *Id.* Accordingly, below, I first analyze the federal and state claims regarding excessive use of force. I then analyze the claims regarding excessive detention and lack of probable cause. Finally I analyze the retaliation claims.

**A.     Excessive Force**

"A claim that excessive force was used in the course of a seizure is subject to an objective test of reasonableness under the totality of the circumstances . . . ." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (per curiam). "The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id.* at 166. The same reasonableness standard applies to excessive force used after arrest but before arraignment. *See Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989); *Tribie v. Parwanta*, No. 10 CV 6016(VB), 2012 WL 246619, at

*6 (S.D.N.Y. Jan. 26, 2012) ("If excessive force was allegedly used before arraignment, Fourth Amendment standards govern."). "Courts have found that the use of any force is often unwarranted" where officers are "not effecting an arrest, but instead conducting a custodial interrogation at the precinct." *Lindsey v. Butler*, 43 F. Supp. 3d 317, 326 (S.D.N.Y. 2014), *reconsidered in nonpertinent part*, No. 11 Civ. 9102(ER), 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014).

"The determinative issue is the nature of the force used, rather than the nature of the injury." *Id.* "If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987); *see also Sash v. United States*, 674 F. Supp. 2d 531, 539 (S.D.N.Y. 2009) ("Just as reasonable force is not unconstitutional even if it causes serious injury, neither does unreasonable force become immunized from challenge because it causes only minor injury.").

1. *The defendants are not entitled to summary judgment on the excessive-force claims on the basis of their argument from medical records.*

The defendants' primary argument is that the plaintiff's excessive-force claims fail entirely because he "cannot offer any evidence to support" them and because his "version of events . . . is directly contradicted by the medical records." Defs.' Br. 7–8. Specifically, the defendants argue that because "the medical records unequivocally contradict plaintiff's version of events, . . . the Court should discredit his account of the incidents, and grant summary judgment in favor of the defendants." Defs.' Reply Br. 4, ECF No. 68.

I find this argument puzzling.[6]

First, the defendants *do not dispute* that Santiago "jumped on plaintiff, [and] pushed him hard against the wall" (Defs.' 56.1 Statement ¶ 7), that "O'Donohoe punched plaintiff while

---

[6] As a preliminary matter, the only medical records that are in the record here predate the assault that took place in front of Komar (*see* Defs.' Reply Br. 4 n.2), and thus the medical-records evidence could not possibly contradict the plaintiff's testimony regarding that incident.

7

. . . approximately four officers held him" (*id.* ¶ 38), that O'Donohoe and other "officers kicked [the plaintiff] all over his body for what seemed like a very long time" (*id.* ¶ 39), that O'Donohoe's assault left the plaintiff bruised and bleeding (*id.* ¶ 44), that Komar observed the plaintiff being "punched and kicked in front of [his] desk by unidentified officers" (*id.* ¶ 49), and that this latter assault also left the plaintiff bruised and bleeding (*id.* ¶ 52).

The only conceivable dispute, then, would seem to go to the extent of the plaintiff's injuries. But "even if it could be said that Plaintiff's injuries were minor or temporary, this would make little difference to the Court's analysis." *Lindsey*, 43 F. Supp. 3d at 328 n.13. Courts have found that "[b]ruising alone is sufficient to preclude summary judgment." *Li v. Aponte*, No. 05 Civ. 6237(NRB), 2008 WL 4308127, at *6 (S.D.N.Y. Sept. 16, 2008). Although Santiago's admitted conduct may ultimately have been reasonable, depending on whether and to what extent the plaintiff resisted arrest, I cannot now enter judgment for Santiago.[7] And I have difficulty imagining any situation in which O'Donohoe's and Komar's admitted conduct would have been objectively reasonable.

Second, even without the above undisputed facts, it would be "an impermissible credibility determination" for me to grant summary judgment "on the basis of the disparity between some of [the plaintiff's] medical records and statements in his [depositions]" *Scott v. Coughlin*, 344 F.3d 282, 289–90 (2d Cir. 2003). "The credibility of [a plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact." *Id.* at 290.[8] This case is not one where the plaintiff's testimony is "'so replete with inconsistencies and

---

[7] On the defendants' motion for summary judgment, I of course view the disputed facts in the light most favorable to the plaintiff. *See Jeffreys*, 426 F.3d at 553.

[8] The defendants attempt to distinguish *Scott* on the ground that, in *Scott*, there was a disagreement between the plaintiff, who claimed serious injury, and medical records that showed only "some injury," whereas here the medical records "do not document *any* injury." Defs.' Reply Br. 4. But the holding of *Scott*—that "weigh[ing] contradictory proof" is the province of the jury (344 F.3d at 290)—is unrelated to the degree to which the evidence conflicts.

8

improbabilities' that no reasonable juror would ... credit the allegations made in his complaint." *Jeffreys*, 426 F.3d at 555 (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003)).

The excessive-force claims must therefore be evaluated on a defendant-by-defendant basis.[9]

### 2. *Officer Brathwaite is entitled to summary judgment on these claims.*

The defendants argue that excessive-force claims based on the plaintiff's arrest can proceed only against Santiago because, "by plaintiff's own account, there were no officers present other than Officer Santiago" when the arrest occurred. Defs.' Br. 10. The plaintiff concedes that O'Donohoe, Garafalo, and Komar were uninvolved in the arrest. *See* Pl.'s Br. 17 n.4. But the plaintiff argues that a jury could find that "Brathwaite witnessed Santiago using excessive force" during the arrest and that she both "failed to intervene to stop it" and also "allowed Santiago to continue handling Plaintiff," thereby giving Santiago "the opportunity to brutalize him again"—as, the plaintiff asserts, Santiago did, "throwing him into the police vehicle, causing him to bang his forehead." *Id.* at 28.

"A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for [her] failure to do so if [she] observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Accordingly, I will grant summary judgment

---

[9] The defendants argue, and the plaintiff concedes, that Barra was not involved in any use of excessive force against the plaintiff. *See* Defs.' Br. 10–12; Pl.'s Br. 17–18 nn.4–6. The amended complaint does not purport to state any excessive-force claims against Barra. *See* Am. Compl. ¶¶ 27–54.

9

to Brathwaite on the excessive-force claims unless a reasonable jury could find that Brathwaite could have prevented, but failed to prevent, use of excessive force by Santiago.

A reasonable jury could find that Santiago used excessive force against the plaintiff when he seized him and placed him in handcuffs. It is undisputed that Santiago "jumped on plaintiff" and "pushed him hard against the wall." Defs.' 56.1 Statement ¶ 7. The plaintiff testified that that conduct injured his shoulder and neck and caused his forehead to hit the wall. Zalewski Dep. Pt. 1, at 101:17–21. What is more, the plaintiff testified, he wasn't resisting at all. *See id.* at 102:11–18, 103:12–18. Such testimony, if credited by a jury, could be enough to find that Santiago used excessive force against the plaintiff. *See, e.g.*, *Robison*, 821 F.2d at 923–24 (observing, where plaintiff testified that officer "'pushed' her against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back,'" that "assertions such as these are sufficient to prevent the summary dismissal of a § 1983 claim for excessive force"); *Tribie*, 2012 WL 246619, at *7 (finding, where plaintiff alleged that officer "kicked him and shoved him against a wall during his arrest," that "a jury should resolve whether the officer's actions amounted to excessive force").

That said, the plaintiff has not presented sufficient evidence for a reasonable jury to find that Brathwaite could have prevented this conduct. The plaintiff has testified that no officer other than Santiago was immediately present while Santiago was arresting him. Zalewski Dep. Pt. 1, at 101:25–102:2. And he testified that he did not know whether Brathwaite, who arrived shortly thereafter, even saw his arrest. *Id.* at 104:12–17, 24–105:1.

A reasonable jury could also find that Santiago used excessive force against the plaintiff when he allegedly threw the plaintiff into the police car, causing the plaintiff to hit his head. *See, e.g.*, *Maxwell v. City of New York*, 380 F.3d 106, 108–09 (2d Cir. 2004) (ruling, where plaintiff alleged that officer "shoved her head first into his police car, causing her head to strike the

metal partition between the front and back seats," that "a jury should assess [the plaintiff's] account of what occurred during her arrest"); *Jean-Laurent v. Hennessy*, No. 05-CV-1155 (JFB)(LB), 2008 WL 3049875, at *11 (E.D.N.Y. Aug. 1, 2008) ("[A] rational fact-finder could find that defendants intentionally hit plaintiff's head on the car during the arrest and strip search—even though plaintiff was already handcuffed—and that this constituted an objectively unreasonable use of force that resulted in compensable injury."); *Davenport v. County of Suffolk*, No. 99-CV-3088 (JFB), 2007 WL 608125, at *11 (E.D.N.Y. Feb. 23, 2007) ("[The plaintiff] may be able to demonstrate that the officer intentionally hit his head on the car during the arrest, causing an injury to his head, and he could argue that this alleged gratuitous use of force by an officer constituted an objectively unreasonable use of force.").

Again, however, there is insufficient evidence for a reasonable jury to find that Brathwaite could have prevented this conduct. Santiago's alleged use of force—throwing the plaintiff into the police car—was a single, sudden action, and there is nothing in the record to suggest that Brathwaite had an actual opportunity to stop it. *Cf. Figueroa*, 825 F.3d at 107 ("[T]he assault's duration will always be relevant and will frequently assume great importance."). That distinguishes this case from *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988), in which the court determined that there was sufficient evidence to find a police officer liable for failure to intercede when he stood by and did nothing while another officer "dragg[ed] [an arrestee] across the floor by his throat" (*id.* at 11–12); the very act of dragging implies some duration of time, raising an inference for the jury that there was an opportunity to take action.

Nor was Brathwaite "alerted to the need to protect [the plaintiff] from further abuse." *Id.* at 12. Although a jury could find that she witnessed Santiago using excessive force when arresting the plaintiff (*compare* Brathwaite Dep. 29:19–20 ("I observed Officer Santiago having difficulty placing the [plaintiff] in cuffs."), *with* Zalewski Dep. Pt. 1, at 102:3–5 (testifying that

11

he was placed in handcuffs "right away" after being thrown against wall)), observing the violent arrest alone would not have caused Brathwaite to suspect that more abuse of the plaintiff was likely to occur. *Cf., e.g.*, *Cuellar v. Love*, No. 11-cv-3632 (NSR), 2014 WL 1486458, at *3, *8 (S.D.N.Y. Apr. 11, 2014) (ruling that, where one officer first "tackled and cuffed [plaintiff] without warning," then "smashed" plaintiff's face into sidewalk, and finally "slammed Plaintiff to the ground," other officer on scene was entitled to summary judgment regarding "the face bashing" (second alleged act of force) because he had no reason to anticipate it, but was potentially liable for "the subsequent body slamming" (third alleged act of force) as he was by then "on notice" and "had a duty to prevent further violations").

Accordingly, I grant summary judgment to Brathwaite and dismiss the excessive-force claims against her.

  *3. Sergeant O'Donohoe is not entitled to summary judgment on these claims.*

Next, the defendants argue that "the claim that plaintiff was beaten up in one of the 94th Precinct's holding cells can only survive against Sgt. O'Donohoe." Defs.' Br. 11. The plaintiff concedes as much, at least as to the individual defendants. *See* Pl.'s Br. 18 & n.5.[10] The defendants also argue, however, that "the alleged threat[] of force made by . . . O'Donohoe do[es] not constitute excessive force." Defs.' Reply Br. 5.

The defendants' position is legally tenuous. Courts in this circuit have found that "verbal threats, combined with the brandishing of [a] weapon, could be unreasonable and therefore constitute excessive force." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 296 (S.D.N.Y. 2015); *accord Lilakos v. New York City*, No. 14-cv-05288 (PKC) (LB), 2016 WL 5928674, at *6 (E.D.N.Y. Sept. 30, 2016); *see also Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006)

---

[10] The plaintiff contends that the claim also survives against the city (*see* Pl.'s Br. 18), and the defendants do not offer any argument to the contrary.

12

("Circuit law could very well support [the] claim that a gunpoint death threat issued to a restrained and unresisting arrestee represents excessive force . . . .").

But I need not enter that debate to resolve this issue. According to the plaintiff, O'Donohoe pointed his Taser gun at the plaintiff's chest and said, "if you don't provide us the information, what we want, I'm going to taser you." Zalewski Dep. Pt. 1, at 159:8–25. And then, the plaintiff testified, when he protested against the threat, O'Donohoe punched the plaintiff while the plaintiff was restrained by three or four other officers. *Id.* at 144:3–9. After the plaintiff fell to the ground, O'Donohoe and the other officers began kicking him. *Id.* at 144:9–12, 162:7–12. Crediting the plaintiff's testimony, I find that O'Donohoe's verbal threat was inseparable from the subsequent beating: together they composed one single incident of excessive force. The alleged threat alone would arguably have been sufficient to survive the defendants' motion, but the totality of O'Donohoe's conduct emphatically requires the denial of summary judgment.

Nor is O'Donohoe entitled to qualified immunity for this use of force: O'Donohoe acknowledges that he entered the plaintiff's holding cell in the middle of the night with multiple other officers. *See* Defs.' 56.1 Statement ¶ 37. The plaintiff alleges that O'Donohoe then threatened the plaintiff with a Taser gun, after which, O'Donohoe admits, he took part in a beating that left the plaintiff bruised and bloodied on the cell floor. *See* Zalewski Dep. Pt. 1, at 141:23–144:12; Defs.' 56.1 Statement ¶¶ 38–41. "Any reasonable officer would know that this conduct constituted gratuitous—and excessive—force." *Merrill v. Schell*, 279 F. Supp. 3d 438, 447 (W.D.N.Y. 2017). "No reasonable police officer could possibly have believed that what [the plaintiff] has alleged was 'legitimately require[d]' by his or her duties. . . . On the contrary, it was unnecessary, gratuitous, and excessive by definition." *Id.* at 448 (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).

13

*4. Sergeant Garafalo is entitled to summary judgment on these claims.*

The plaintiff also seeks to maintain excessive-force claims against Garafalo for the death threat that she allegedly made to him at the precinct. *See, e.g.*, Pl.'s Br. 18. The defendants respond that these claims fail as a matter of law. *See* Defs.' Reply Br. 5.

Garafalo presents a situation distinct from that of O'Donohoe. The plaintiff alleges that Garafalo threatened his life, but he does not allege that she brandished a weapon or was even carrying a weapon at the time that the threat was issued, nor does he allege that she ever touched him. Nonetheless, the plaintiff argues that, logically, "an officer making a death threat who clearly has the capacity to fulfill the threat is just as unreasonable and just as terrifying as a police officer making a threat of physical harm while brandishing a weapon." Pl.'s Br. 31. The plaintiff thus seeks to support a claim against Garafalo with the same case law that he marshals against O'Donohoe.

Courts in this circuit, however, have consistently said that "the mere threat of force, without more, does not constitute excessive force." *Escoffier v. City of New York*, No. 13-CV-3918 (JPO), 2016 WL 590229, at *4 (S.D.N.Y. Feb. 11, 2016); *see also Smith v. City of New York*, No. 14 Civ. 5934(JCF), 2015 WL 3929621, at *3 n.3 (S.D.N.Y. June 17, 2015) ("[I]n this Circuit, neither mere verbal abuse nor mere threats of force support an excessive force claim."). Summary judgment is therefore granted to Garafalo, and the excessive-force claims against her are dismissed.

**B.  False Arrest and False Imprisonment**

*1. Sergeant Barra and Officer Brathwaite are granted summary judgment on these claims.*

The defendants argue that "[a]ny false arrest claim against Sgt. Barra or Officer Brathwaite must be dismissed because they relied on information provided to them by Officer Santiago." Defs.' Br. 12. The plaintiff concedes this point. Pl.'s Br. 32. Accordingly, Brathwaite

and Barra are granted summary judgment, and the false-arrest and false-imprisonment claims against them are dismissed.

*2. Sergeant O'Donohoe and Captain Komar are denied summary judgment on these claims.*

In their reply brief, the defendants argue, for the first time, that "any false imprisonment claims against Sgt. O'Donohoe and Captain Komar must be dismissed" as well. Defs.' Reply Br. 11. Specifically, they contend that, like Brathwaite and Barra, O'Donohoe and Komar were also "entitled to rely on information received from other officers regarding the reason for plaintiff's detention," thus relieving them of any responsibility for the plaintiff's imprisonment. *Id.* Defendants O'Donohoe and Komar failed to raise this argument (or indeed any false-imprisonment argument) in their opening brief, depriving the plaintiff of the opportunity to respond, so I will not grant them summary judgment on these claims. *See, e.g., Concepcion v. United States*, 181 F. Supp. 2d 206, 231 (E.D.N.Y. 2002) ("[I]t is well settled in the Second Circuit that a party may not raise an argument for the first time in a reply brief.").

In any event, the defendants' tardy argument is not responsive to the plaintiff's allegations.

For the most part, "the tort of false arrest is synonymous with that of false imprisonment." *Posr*, 944 F.2d at 96. But "even if an initial arrest is valid, a claim for false imprisonment lies under state law if a plaintiff is thereafter unreasonably detained." *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 201 (S.D.N.Y. 2001), *aff'd*, 48 F. App'x 363 (2d Cir. 2002). And under the Constitution, "when there has been a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005).[11] "Where an arrested individual does not receive a probable cause determination within 48 hours, . . . the

---

[11] As noted earlier, these federal and state claims are "substantially identical." *Posr*, 944 F.2d at 95.

arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance" justifying the delay in arraignment. *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991).

Here, the plaintiff was not arraigned within 48 hours; rather, he was in custody for over 88 hours—more than three-and-a-half days—before finally being arraigned and released. *See* Arraignment Form 1. The plaintiff claims that O'Donohoe and Komar are liable for his unreasonably prolonged detention because O'Donohoe's "assault and battery of Plaintiff" and Komar's "failure to intervene to stop the assault and battery of Plaintiff caused Plaintiff to have to go to the hospital, thereby elongating his imprisonment." Pl.'s Br. 32; *cf. Allen v. City of New York*, No. 03 Civ. 2829(KMW)(GWG), 2007 WL 24796, at *16 (S.D.N.Y. Jan. 3, 2007) (ruling that individual officers may be liable for excessive detention if they "participated directly in the alleged constitutional violation" or were "grossly negligent in supervising subordinates who committed the wrongful acts" (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004))). Because the plaintiff's complaint against O'Donohoe and Komar pertains to the length of time that the plaintiff was in custody, it is simply no answer for the defendants to say that O'Donohoe and Komar believed that there was probable cause for the plaintiff's original arrest.[12]

## C.  Retaliation

The plaintiff makes four particular allegations in support of his retaliation claims: First, he alleges that O'Donohoe retaliated against him, by threatening him with a Taser gun, for refusing to identify himself. *See* Pl.'s Br. 33. Second, the plaintiff alleges that O'Donohoe

---

[12] As for Garafalo, it is unclear what record evidence would support a plausible false-arrest or false-imprisonment claim against her. Nevertheless, because the defendants do not argue that the false-arrest and false-imprisonment claims against Garafalo should be dismissed, I do not dismiss them now.

16

retaliated against him, by beating him, for stating that O'Donohoe would be sued "if anything happened to Plaintiff." *See id.* at 33–34. Third, the plaintiff alleges that Garafalo retaliated against him, by threatening his life, for refusing to identify himself. *See id.* at 34. Fourth and finally, he alleges that Komar retaliated against him, by failing to prevent him from being beaten, for complaining about his poor treatment at the precinct. *See id.* at 34–35. The plaintiff argues that the two beatings that he received each "lengthened [his] imprisonment" by "requir[ing] [him] to seek medical attention." *Id.*

A First Amendment retaliation claim requires a showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott*, 344 F.3d at 287 (quoting *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002)).

With regard to the first prong of this test—that the plaintiff's speech or conduct was protected—the defendants argue that "plaintiff's refusal to identify himself is [not] protected speech." Defs.' Reply Br. 9. With regard to the second prong—that the defendants took adverse action—the defendants argue that "plaintiff offers no evidence" that any of the three defendants "had any involvement in the decision to hold plaintiff for approximately 88 hours." Defs.' Br. 15. Finally, the defendants raise no argument as to the third prong—the required causal connection between the two.

   *1. Sergeant Garafalo is entitled to summary judgment on these claims.*

The defendants' first argument disposes of the retaliation claims against Garafalo. The plaintiff does not cite, nor am I aware of, any case law supporting the proposition that refusing to identify oneself to the police, after one has been arrested, is protected First Amendment activity. And the Supreme Court has ruled that "a State [may] require a suspect to disclose his name in the course of a *Terry* stop." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 187 (2004).

The Court's opinion in *Hiibel* discusses only the Fourth and Fifth Amendments, but in light of it, and the dearth of any decisions to the contrary, I find that the plaintiff had no "clearly established" First Amendment right to refuse to identify himself at the precinct (*see Pearson v. Callahan*, 555 U.S. 223, 227 (2009)). Because the plaintiff's allegation against Garafalo is that she retaliated against him for refusing to provide identification, Garafalo is at least entitled to qualified immunity, and so the retaliation claims against her are dismissed. *See id.* at 245.

*2. Sergeant O'Donohoe and Captain Komar are not entitled to summary judgment on these claims.*

This argument also answers the plaintiff's allegation that O'Donohoe threatened the plaintiff in response to the plaintiff's refusal to identify himself. O'Donohoe is thus protected by qualified immunity for that conduct.

The plaintiff also alleges, however, that O'Donohoe retaliated against him, by beating him, for warning O'Donohoe not to hurt him. *See* Pl.'s Br. 33–34. And the plaintiff alleges that Komar retaliated against him for complaining about being mistreated at the precinct. *See id.* at 34–35. Those allegations are based not on a right not to speak but on speech that the defendants do not assert is unprotected. Nor could they. *See, e.g.*, *Williams v. Town of Greenburgh*, 535 F.3d 71, 77 (2d Cir. 2008) ("[S]tatements condemning [a town official] as, *inter alia*, a 'Junior Mussolini' engaged in 'intimidation tactics,' . . . while perhaps coarse, fall within the ambit of protected speech."); *cf. City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

The defendants' second argument—that they were not responsible for the plaintiff's prolonged detention—fares no better. As discussed in Section B.2, *supra*, the plaintiff has explained how O'Donohoe's assault and Komar's failure to intervene contributed to the

18

plaintiff's unreasonably long imprisonment. *Cf. Sorensen v. City of New York*, No. 98 Civ. 3356(HR), 2003 WL 169775, at *4 (S.D.N.Y. Jan. 23, 2003) ("The question of whether the [defendants] intentionally delayed plaintiff's arraignment is one of intent and therefore cannot be resolved on a motion for summary judgment."), *aff'd in part, appeal dismissed in part*, 413 F.3d 292 (2d Cir. 2005).

The defendants have failed to respond meaningfully to the plaintiff's retaliation claims against O'Donohoe and Komar, and summary judgment is thus denied.

## CONCLUSION

For the foregoing reasons, the defendants' motion for partial summary judgment is granted in part and denied in part. Specifically, on the excessive-force claims (i.e., the fifth and seventh causes of action in the amended complaint), summary judgment is granted to defendants Brathwaite and Garafalo and denied to defendants Santiago, O'Donohoe, and Komar (as well as to the city). On the false-arrest and false-imprisonment claims (i.e., the first and third causes of action), summary judgment is granted to defendants Brathwaite and Barra and denied to defendants O'Donohoe and Komar. And on the retaliation claims (i.e., the ninth and eleventh causes of action), summary judgment is granted to defendant Garafalo and denied to defendants O'Donohoe and Komar.

So ordered.

\_\_\_\_/s/_____
Allyne R. Ross
United States District Judges

Dated:     October 19, 2018
           Brooklyn, New York